IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

DECEMBER 1997 SESSION



FILED

March 17, 1998

Cecil W. Crowson
Appellate Court Clerk

STATE OF TENNESSEE,               )
                                  )
            APPELLEE,             )
                                  )        No. 01-C-01-9701-CC-00006
                                  )
                                  )        Houston County
v.                                )
                                  )        Allen W. Wallace, Judge
                                  )
                                  )        (Aggravated Burglary and Theft)
BRIAN FELTS,                      )
                                  )
            APPELLANT.            )


FOR THE APPELLANT:                        FOR THE APPELLEE:

R. Todd Hansrote                          John Knox Walkup
Attorney at Law                           Attorney General & Reporter
1 Public Square, Suite 400                425 Fifth Avenue, North
Clarksville, TN 37040                     Nashville, TN 37243

                                          Ellen H. Pollack
                                          Assistant Attorney General
                                          450 James Robertson Parkway
                                          Nashville, TN 37243-0493

                                          Dan M. Alsobrooks
                                          District Attorney General
                                          P.O. Box 580
                                          Charlotte, TN 37036-0580

                                          George C. Sexton
                                          Assistant District Attorney General
                                          Humphreys County Courthouse
                                          Waverly, TN 37185


OPINION FILED:_____


AFFIRMED


Joe B. Jones, Presiding Judge

# O P I N I O N

The appellant, Brian Felts (defendant), was convicted of theft, a Class D felony, and aggravated burglary, a Class C felony, by a jury of his peers. The trial court, finding the defendant to be a multiple offender, imposed the following Range II sentences: (a) for theft, confinement for four (4) years in the Department of Correction and (b) for aggravated burglary, confinement for eight (8) years in the Department of Correction. These two sentences are to be served concurrently, but the aggravated burglary sentence is to be served consecutively to a sentence in a Cheatham County case. One issue is presented for review. The defendant contends the trial court committed error of prejudicial dimensions by permitting the State of Tennessee (state) to cross-examine him about sworn testimony he gave in open court when he entered pleas of guilty to these same offenses. The pleas of guilty were later set aside in a post-conviction action. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issue presented for review, it is the opinion of this court that the judgment of the trial court should be affirmed.

## I.

## PRIOR PROCEEDINGS

The crimes in question were committed on December 16, 1993 in Houston County. The defendant was arrested in Cheatham County. On December 17, 1993, the Houston County sheriff and one of his deputies went to Ashland City, the county seat of Cheatham County, took custody of the defendant, and transported him to Houston County.

On January 3, 1994, the Houston County Grand Jury returned a two-count indictment against the defendant. The indictment charged the defendant with the offenses of aggravated burglary and theft over $1,000. On May 12, 1994, the defendant entered pleas of guilty to aggravated burglary and theft over $1,000. He took the witness stand and was questioned by counsel. The defendant admitted he committed the two offenses during his testimony.

2

The defendant filed an action for post-conviction relief. The record is devoid of evidence regarding the grounds alleged in the petition. The record reflects the trial court granted the defendant post-conviction relief. The guilty pleas and sentences were set aside, and the defendant was placed in the same status he enjoyed prior to the submission hearing. Again, the record is devoid of evidence as to why the trial court granted the relief sought.

The defendant was tried on March 27, 1995. The jury convicted the defendant of the offenses alleged in the indictment, and the trial court imposed the sentences hereinabove set forth.

## II.

## THE TRIAL PROCEEDINGS

On the morning of December 16, 1993, Jeffrey L. Parchman went to Clarksville. He left his residence at approximately 8:00 a.m. He returned to his residence at approximately 12:00 p.m. When he arrived he saw a man "run out of my house, drop[ ] a bunch of stuff in the yard, jump[ ] in his car" and drive away. Mr. Parchman followed the defendant approximately five miles. As the defendant drove along the highway, he began throwing items he had taken from the Parchman residence out of his vehicle.

When the defendant reached the intersection of Barber Highway and Ellis Mills Road, the defendant's vehicle struck a tree. Mr. Parchman pulled his pickup truck behind the defendant's vehicle. He saw the defendant throw a camera on the ground. The defendant retrieved a .22 caliber pistol, which had been taken from the Parchman residence, and pointed the pistol at Mr. Parchman. Mr. Parchman shifted his truck into reverse, laid down on the seat, and began backing away from the defendant. He apparently struck a fence while he was backing. The defendant left on foot after removing the license plate from his car. He disappeared in a wooded area near the intersection. Personal property taken from the Parchman residence was found in the defendant's vehicle.

The license plate number (obtained by Mr. Parchman) and the vehicle identification

number were registered in the defendant's name. Warrants were issued for the defendant's arrest. Copies of these warrants were faxed to Cheatham County. On the morning of December 17, 1993, the Cheatham County Sheriff's Department notified the Houston County Sheriff's Department the defendant was in custody. Sheriff Jimmy Mobley and one of his deputies went to Cheatham County, took the defendant into custody, and returned him to Houston County.

The defendant gave Deputy Wilson Coffelt a statement admitting the aggravated burglary and removing personal property from the Parchman residence. He stated he obtained entrance to the residence by using a screwdriver to pry open the back door. The defendant asked to speak with the victim. Mr. Parchman went to the Houston County Sheriff's Department and talked with the defendant. The defendant told Mr. Parchman he was sorry for entering his residence and stealing his personal property. He related that his wife might be pregnant. He promised to pay Mr. Parchman for the damage to his residence and any of the personal property removed from the residence which was not recovered. Mr. Parchman described the defendant's statements to him as "just a sob story."

Mr. Parchman made a courtroom identification of the defendant as the person he saw leaving his residence on December 16, 1993. He also testified the value of the personal property removed from his residence was at least $2,000. All of the property the defendant removed from the residence was recovered except the pistol. The defendant left the situs where he wrecked his vehicle with the pistol. In his statement to the police, the defendant said he gave the pistol to a motorist in exchange for transportation to his residence.

The defendant testified in support of his defense. He stated he was in Clarksville on the morning of December 16, 1993. He parked his car at a gas station and left on foot to visit several businesses in Clarksville. He completed several employment application forms and was interviewed. When he returned to the gas station at approximately 10:00 a.m., the vehicle was missing.

According to the defendant, he called the Clarksville Police Department to report the theft of his vehicle. He was advised he had to have certain information pertaining to the

4

registration before the Clarksville Police Department would accept the theft report. The defendant testified he walked fifteen miles to his residence, obtained the information, and reported the theft to the Clarksville Police Department. He stated he walked rather than call his wife for a ride because they did not have a telephone. He did not know the telephone number of his neighbors who had telephones. He could not remember the names of the two police department employees with whom he discussed the theft of his vehicle.

The assistant district attorney general began his cross-examination of the defendant in the following manner:

> Q. Mr. Felts, do you remember when you walked up here and before you sat down there and the Judge got you to raise your hand to swear to tell the truth, the whole truth and nothing but the truth, so . . . help you God?
>
> A. Yes, sir, I do.
>
> Q. That don't mean nothing to you, does it?
>
> A. Yes, sir, it does.
>
> Q. Well, do you remember the one other time you came in here to court and you held up your hand and said, "I swear to tell the truth, the whole truth and nothing but the truth, so help me God"?
>
> A. Yes, sir.
>
> Q. Do you remember telling the Judge there that you broke into Mr. Parchman's house?
>
> A. No, sir.
>
> Q. Do you remember telling him that you carried the stuff out?
>
> A. No, sir.
>
> Q. Do you remember telling him that you drove down the road and ran into that tree?
>
> A. No, sir.
>
> Q. Do you remember telling him that you took the license plate off the car and ran out through the woods?
>
> A. No, sir.
>
> MR. HANSROTE: Your Honor, can we approach the bench, please?
>
> THE COURT: Yes.

5

A bench conference was held and the following colloquy took place:

MR. HANSROTE: Your Honor, he's going into matters that were testified to at a plea --

THE COURT: No, he testified to it when he entered his plea, Mackey, under Mackey charge. I made everybody swear and testify.

MR. HANSROTE: Well, Your Honor, it's a felony plea and I'd ask the court to not let him question Mr. Felts about that.

THE COURT: No, it's previous testimony in court. I'm going to allow it.

MR. HANSROTE: Yes, sir.

The cross-examination of the defendant resumed.

BY GENERAL SEXTON:

Q. You don't remember that?

A. No, sir. I remember pleading guilty to the crime.

Q. Well, let me ask you, you don't remember swearing under oath just like you did today, held up your hand and swore to tell the truth --

A. Yes, sir, I remember swearing.

Q. Do you remember swearing that you broke into the house?

A. No, sir, I don't.

Q. Do you know that you just committed perjury?

A. I didn't know that. I don't remember swearing. I remember swearing, but I don't remember saying I broke in the house. I remember pleading guilty to the crime.

The state called Mr. Parchman as a rebuttal witness. During his rebuttal testimony, the following colloquy occurred:

Q. Mr. Parchman, you've been in the court room or were in the court room at least when Brian Felts testified here today?

A. Yes, I was.

Q. And did you hear him raise up his hand and take that oath?

A. Yes, I did.

Q. Have you ever heard him do that before?

6

A. Yes, I have.

Q. Did he say the same thing then he said today?

MR. HANSROTE: Objection, Your Honor. Can we approach?

THE COURT: Yes.

The following occurred during the bench conference:

MR. HANSROTE: Before we go back into what his testimony has been, the best evidence of the testimony is a transcript and if we don't have a transcript, bringing those people in to testify to what he testified to is improper best evidence --

THE COURT: Well, he has testified that he didn't give sworn testimony, the way I understand it. This is rebuttal to that testimony. Overruled.

Direct examination of Mr. Parchman continued:

BY GENERAL SEXTON:

Q. You were saying you had heard him raise that hand up and take that same oath before?

A. I did.

Q. Did you hear what he said that other time?

A. He pleaded guilty to all the charges.

Q. But didn't he give the state of facts and tell exactly how everything happened there that day?

A. Yes, he did.

This court must now undertake the task of determining whether the assistant district attorney general was entitled to question the defendant regarding the testimony he gave during the submission hearing; and this court must further determine if allowing the rebuttal testimony regarding the defendant's testimony during the submission hearing was proper.

## III.

## ADMISSIBILITY OF SUBMISSION HEARING TESTIMONY

The trial court and the parties were aware the questions propounded by the assistant district attorney general to the defendant concerned his submission hearing testimony. It appears the court was of the opinion this prior recorded testimony could be

7

used to impeach the defendant because his trial testimony and his submission hearing testimony were entirely different. During the submission hearing, he admitted he committed the crimes, he explained how he committed the crimes, and what occurred after Mr. Parchman returned home. He denied he committed the crimes during his trial testimony. Of course, the question this court must address is whether the state was entitled to question the defendant regarding his testimony during the submission hearing and Mr. Parchman's rebuttal testimony.

## A.

The admission of testimony regarding withdrawn guilty pleas, offers to plead guilty, and statements made incident to guilty plea proceedings are governed by Rule 11(e)(6), Tennessee Rules of Criminal Procedure, and Rule 410, Tennessee Rules of Evidence. Rule 11(e)(6), Tennessee Rules of Criminal Procedure states:

> Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

Rule 410, Tennessee Rules of Evidence, parallels Rule 11(e)(6). Rule 410 states:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the party who made the plea or was a participant in the plea discussions:
>
> (1) a plea of guilty which was later withdrawn;
>
> (2) a plea of nolo contendere;
>
> (3) any statement made in the course of any proceedings under Rule 11 of the Tennessee Rules of Criminal Procedure regarding either of the foregoing pleas; or

8

(4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn. Such a statement is admissible, however, in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

Based upon a comparison of the two rules, it appears Rule 410(3), Tennessee Rules of Evidence, addresses the issue presented for review.

**B.**

The purpose of both Rule 11(e)(6), Tennessee Rules of Criminal Procedure, and Rule 410, Tennessee Rules of Evidence, is to promote the settlement of criminal actions. Neil P. Cohen, et al., <u>Tennessee Law of Evidence</u> § 410.1, at 225 (3d ed. 1995). Also, these rules permit the district attorney general and assistant district attorney generals to engage in frank dialogue with defense counsel when discussing the settlement of criminal actions. <u>Id</u>. In addition, these rules protect the accused from future repercussions if (a) he enters, or attempts to enter, a plea agreement, (b) he is allowed to withdraw the guilty plea, or (c) the trial court rejects the plea agreement. Neither of these rules insulate the accused when he is prosecuted for perjury or false statement.

Rule 11(e)(6), Tennessee Rules of Criminal Procedure, protects "statements made in connection with, and relevant to, any of the foregoing pleas [guilty plea and nolo contendere plea] or offers." This rule does not address sworn testimony given during a submission hearing.

Rule 410(3), Tennessee Rules of Evidence, protects "any statement made in the course of any proceedings under Rule 11 of the Tennessee Rules of Criminal Procedure regarding either of the foregoing pleas [a guilty plea and a plea of nolo contendere]." This court is of the opinion the phrase "any statement made in the course of any proceedings" encompasses the sworn testimony of an accused during a submission hearing.

In this case, the defendant was granted relief from his guilty pleas and sentences in a post-conviction action. He opted to go to trial rather than attempt to negotiate a new plea agreement. This court is of the opinion the setting aside of guilty pleas in a post-

conviction action should be treated the same as if the guilty pleas had been withdrawn or the trial court had rejected a plea agreement. See Neil P. Cohen, et al., Tennessee Law of Evidence, § 410.2, at 226 (3d ed. 1995). Thus, the trial court erred in permitting the assistant district attorney general to question the defendant regarding the admission he made during the submission hearing. The trial court also erred in allowing the subsequent rebuttal testimony of Mr. Parchman. Id. at § 410.4 at 227. See United States v. Lawson, 683 F.2d 688, 690-92 (2nd Cir. 1982), aff'd, 736 F.2d 835 (2nd Cir. 1984).

The next issue this court must address is whether the questioning of the defendant regarding his submission hearing testimony and the eliciting of the rebuttal testimony were harmless error.

# IV.

# HARMLESS ERROR ANALYSIS

An accused in a criminal prosecution is not entitled to appellate relief for an error appearing on the face of the record "unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). Rule 52(a), Tennessee Rules of Criminal Procedure, provides that "[n]o judgment of conviction shall be reversed on appeal except for errors which affirmatively appear to have affected the result of the trial on the merits."

In determining whether an error is harmless, the appellate court must consider the evidence adduced during the trial. As the supreme court said in State v. Carter, 714 S.W.2d 241, 248 (Tenn. 1986), cert. denied, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 680 (1987): "The line between harmless and prejudicial error is in direct proportion to the degree of the margin by which the proof exceeds the standard required to convict beyond a reasonable doubt." Carter was quoted with approval in State v. Suttles, 767 S.W.2d 403, 404 (Tenn. 1989), and State v. Adkisson, 899 S.W.2d 626, 644 (Tenn. Crim. App. 1994).

In this case, Mr. Parchman made a positive courtroom identification of the defendant as the person who had entered his residence and removed personal property owned by

10

Mr. Parchman and his wife. Mr. Parchman watched the defendant throw his items of personal property out the car window as the defendant sped away to avoid arrest. The vehicle driven by the defendant was registered to him. Property taken during the burglary was found inside the vehicle.

The defendant asked to talk to Mr. Parchman. He apparently believed he could convince Mr. Parchman not to prosecute him. He admitted he entered the residence using a screwdriver; he said he was sorry for what he had done; and he told Mr. Parchman he would pay for any damage to his residence and any missing property. He said his wife might be pregnant. The defendant confessed his guilt to a Houston County deputy sheriff. He explained the events which occurred on the date in question.

The record reflects the defendant's trial testimony was incredible given the totality of the circumstances. He made a poor witness. The jury did not believe his testimony.

This court is of the opinion the error was harmless. The evidence of the defendant's guilt is overwhelming. In short, the error did not affect the judgment nor did it result in prejudice to the judicial process.

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:

_____
PAUL G. SUMMERS, JUDGE

_____
WILLIAM M. BARKER, JUDGE

11